DECISION. *Page 2 
{¶ 1} Following a jury trial, defendant-appellant Gregory Chambers was found guilty of possession of cocaine[1] and trafficking in cocaine within 1,000 feet of a school premises.[2] Chambers received an aggregate sentence of 18 years' imprisonment.
 {¶ 2} Chambers now appeals. In eight assignments of error, he argues (1) that the trial court erred in not allowing him to represent himself during trial; (2) that the trial court erred in denying his motion for a continuance; (3) that the trial court erred in denying his motion for a fingerprint expert; (4) that the trial court erred in imposing consecutive sentences for the possession and trafficking offenses because they were allied offenses of similar import; (5) that he had received ineffective assistance from his trial counsel; (6) that the trial court erred in overruling his motion for a judgment of acquittal; (7) that his convictions were not supported by sufficient evidence; and (8) that his convictions were contrary to the manifest weight of the evidence.
 Factual Background {¶ 3} On June 1, 2006, Cincinnati police officers Yvonne Gutapfel and Ron Schultz had been on bike patrol in Over-the-Rhine, a section of downtown Cincinnati. While on patrol, they viewed a pickup truck parked on Corwine Street with two passengers inside. Officer Gutapfel testified that she became suspicious *Page 3 
upon seeing this vehicle because it was parked in a secluded, nonresidential area, and because she had previously encountered numerous drug sales on Corwine.
 {¶ 4} Officers Gutapfel and Schultz approached the truck on their bikes. Gutapfel approached the driver's side of the vehicle, where Chambers had been seated. Gutapfel testified that, upon seeing the officers, Chambers was startled and immediately began shoving something underneath his leg. Gutapfel saw a small digital scale on the seat between Chambers and the other passenger. Gutapfel additionally viewed crumbs on Chambers' shirt, which, in her opinion, appeared to be flakes of crack cocaine. And she noted that the other passenger was holding a small bag of what appeared to be crack cocaine. Gutapfel and Schultz removed both men from the truck and eventually placed them under arrest. Gutapfel secured the bag that Chambers had attempted to shove underneath his leg. She testified that the bag contained 19.2 grams of marijuana, two prescription pill bottles containing a total of 13.9 grams of crack cocaine, and $1,083 in cash. The cash was comprised of various denominations of bills, which Gutapfel testified was consistent with the sale of drugs, as the small bills were useful to provide change. According to Gutapfel, the amount of crack cocaine found was more than would be utilized for personal use, indicating a sale.
 {¶ 5} Officer Schultz largely corroborated the testimony of Officer Gutapfel. Schultz indicated that he had approached the passenger side of the vehicle and had seen Chambers attempt to shove a bag underneath his leg. Schultz also viewed flakes of what he believed to be crack cocaine on both Chambers and the other passenger. According to Schultz, the small bills found in the bag that Chambers had attempted *Page 4 
to hide were indicative of drug trafficking. Schultz further testified that, in his opinion, Chambers had been selling drugs to the passenger.
 {¶ 6} At trial, the state presented the testimony of Laura Kimble, a drug analyst with the Hamilton County Coroner's Laboratory. Kimble testified that she had tested the material at issue in this case, and that it included 13.9 grams of crack cocaine and 19.2 grams of marijuana.
 {¶ 7} Robert Heidkamp, a deputy county surveyor with the Hamilton County Engineer's Office, testified that he had measured the distance between the location on Corwine Street where Chambers had been parked and St. Francis Seraph School. According to Heidkamp, these locations were 375 feet apart. And Wanda Hill, president of St. Francis Seraph School, testified that, on June 1, 2006, St. Francis Seraph had been an accredited school in the Cincinnati Archdiocese.
 {¶ 8} Chambers testified on his own behalf. According to Chambers, on June 1, 2006, he had been parked on Corwine while he was "scrapping" material from a nearby street. Chambers had been with two other men, including the passenger found in his car, whom Chambers identified as Charles. Chambers testified that Charles had access to his truck the entire day, and that, upon entering his truck in the evening, he found Charles "doing something with some dope." According to Chambers, the scale and the bag containing the drugs were already on the car bench when he entered the vehicle. Chambers denied selling crack cocaine, but admitted that he had prior convictions for possession of crack cocaine and drug abuse. Chambers further denied shoving the bag containing the drugs underneath his leg. *Page 5 
 Self-Representation {¶ 9} In his first assignment of error, Chambers argues that the trial court erred in not allowing him to represent himself at trial.
 {¶ 10} The law is well established that "a defendant in a state criminal trial has an independent constitutional right of self-representation and * * * may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so."[3] But a defendant who desires to represent himself must assert this right of self-representation timely and unequivocally.[4]
When a defendant has made a timely and unequivocal assertion of the right to self-representation, a trial court must then "make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes [the right to counsel]."[5]
 {¶ 11} In this case, Chambers had filed a pro se motion to proceed as co-counsel along with his appointed attorney. The trial court denied this motion because Ohio does not permit hybrid representation. Chambers then asked the trial court if he could represent himself, stating, "I guess I'll go on my own then." The trial court informed Chambers that, if Chambers desired to represent himself, he needed to file a written motion, and that the trial court would not consider the issue until Chambers filed such a motion. Chambers never filed a written motion. But on the day that trial was to begin, Chambers indicated to the trial court that he did not want his appointed attorney to represent him. Chambers alleged that his counsel was not prepared to proceed, although his counsel denied this allegation. The trial court asked Chambers if he had another attorney ready to proceed, and Chambers *Page 6 
responded in the negative. Chambers further stated, "I'm filing inefficiency of counsel and going on record, the only way Mr. Keller will be my attorney is if the court forces him upon me." The trial court did not allow Chambers to represent himself, and the case proceeded to trial that day.
 {¶ 12} Following our review of the record, we conclude that the trial court did not err in failing to allow Chambers to represent himself. Chambers' motion for self-representation was neither timely nor unequivocal. The first motion filed by Chambers was not a motion for self-representation; rather, it requested that Chambers be allowed to act as co-counsel. The trial court correctly denied this motion.[6] "A defendant has no right to a `hybrid' form of representation wherein he is represented by counsel, but also acts simultaneously as counsel."[7] When his motion was denied, Chambers immediately responded that he "guessed" that he would "go on [his] own then." This was not an unequivocal request for self-representation, but appeared to be a spur-of-the-moment comment. We have previously held that a request is not unequivocal if it is "the result of thinking out loud" or "an emotional response."[8] The trial court provided Chambers with ample time and an opportunity to file a written motion for self-representation, but Chambers failed to do so.
 {¶ 13} In fact, Chambers never again requested to represent himself. On the morning that trial was set to begin, Chambers stated that he did not want his appointed counsel to represent him, but he did not state that he wanted to represent himself. To the extent that this could have been viewed as a request for self-representation, we conclude that it was not timely, but rather was an attempt to *Page 7 
delay the trial.[9] Further, Chambers did not provide valid reasons to support his request that his assigned attorney not represent him. Chambers stated that his counsel was not ready to proceed, but his counsel told the court that he was ready to go forward that morning. And Chambers further stated that his counsel had not subpoenaed any witnesses on his behalf, but his counsel revealed that Chambers had been uncooperative and had refused to reveal the names of those people whom he wanted to testify.
 {¶ 14} Because Chambers failed to make a timely and unequivocal assertion of his right to self-representation, the trial court did not err in failing to conduct a further inquiry and in refusing to allow Chambers to represent himself. The first assignment of error is overruled.
 Denial of Motion for a Continuance {¶ 15} In his second assignment of error, Chambers argues that the trial court erred in denying his motion for a continuance.
 {¶ 16} Chambers had filed, and the trial court had granted, a motion to conduct an independent testing of the crack cocaine. But on the morning that the trial was set to begin, Chambers had not yet received the results of that independent testing. Chambers' counsel requested a continuance to obtain the results. The record indicates that the trial court, in granting the motion for independent testing, had already extended the trial date once. In response to Chambers' request, the trial court stated that "this is going to require at least a two-month continuance of your case, Mr. Chambers, to get the lab results. That continuance is at your request." Chambers responded "[n]o," to which the trial court stated, "Yes. Well, then, we'll *Page 8 
try it today." The court further stated that "he doesn't want a continuance, so I can't grant a continuance against Mr. Chambers' wishes."
 {¶ 17} The trial court engaged in a lengthy dialogue with Chambers, during which Chambers appeared to be unclear about whether he actually wanted a continuance. The trial court reiterated to Chambers that he had objected to a continuance, and Chambers then stated, "No. I want the motion. Why would I object to my own motion?"
 {¶ 18} This court reviews the trial court's denial of a motion for a continuance for an abuse of discretion.[10] Factors relevant to ruling on a motion for a continuance are "the length of the delay requested; whether other continuances have been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors."[11]
 {¶ 19} Following our review of the record, we conclude that the trial court did not abuse its discretion in denying Chambers' request for a continuance. Chambers' request was not explicit, and he appeared to want the best of both worlds. Chambers desired a continuance to obtain the results of the independent testing that he had requested, but he did not want that continuance to be at his request. His position may have reflected a desire to preserve his speedy-trial rights, but Chambers never specifically stated this on the record. *Page 9 
 {¶ 20} The continuance would have resulted in a lengthy delay, and the trial date had already been extended once for this reason. But the requested continuance was based on a legitimate reason. The record indicates that the trial court would have been willing to grant the continuance, but it hesitated after Chambers was unwilling to have the continuance be at his request. Given Chambers' contradictory responses to the trial court regarding whether he wanted the continuance, we cannot conclude that the trial court abused its discretion. Moreover, we fail to see how Chambers was prejudiced by the failure to receive an independent testing of the crack cocaine. Chambers' counsel had the opportunity to fully cross-examine the state's witness, Laura Kimble, on the testing that had been conducted and the methods that had been used.
 {¶ 21} The second assignment of error is overruled.
 Motion for a Fingerprint Expert {¶ 22} In his third assignment of error, Chambers argues that the trial court erred in denying his motion for the appointment of a fingerprint expert. Chambers had filed a pro se motion seeking the appointment of a fingerprint expert to test various items that had been recovered in this case. The trial court denied Chambers' motion.
 {¶ 23} We review the trial court's action for an abuse of discretion.[12] When determining whether to appoint an expert witness, a trial court should consider "(1) the effect on the defendant's private interest in the accuracy of the trial if the requested service is not provided, (2) the burden on the government's interest if the *Page 10 
service is provided, and (3) the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided."[13] A defendant seeking to establish that his due-process rights have been violated by the trial court's failure to appoint an expert "must show more than a mere possibility of assistance from an expert. Rather, a defendant must show a reasonable probability that an expert would aid in his defense, and that denial of expert assistance would result in an unfair trial."[14]
 {¶ 24} In this case, Chambers has not made the requisite showing. Officers Gutapfel and Schultz saw Chambers shove the bag containing the crack cocaine, marijuana, and cash underneath his leg. Chambers' convictions for possession and trafficking would have been supported by sufficient evidence even if an expert had determined that his fingerprints were not contained on the scale, the drugs, and the containers. Chambers was not denied a fair trial because a fingerprint expert was not appointed, and the trial court did not abuse its discretion in denying Chambers' motion to appoint such an expert.
 {¶ 25} The third assignment of error is overruled.
 Alleged Ineffective Assistance {¶ 26} In his fifth assignment of error, Chambers argues that he received ineffective assistance from his trial counsel.
 {¶ 27} To succeed on a claim of ineffective assistance, a defendant must demonstrate that counsel's performance was deficient and that prejudice resulted from the deficient performance.[15] Counsel's performance will not be considered *Page 11 
deficient unless it "fell below an objective standard of reasonableness."[16] A reviewing court must be highly deferential in judging counsel's performance and "must indulge a strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance."[17] A defendant has not been prejudiced by counsel's performance unless he demonstrates that the outcome of the proceedings would have been different but for the deficient performance.[18]
 {¶ 28} Chambers first argues that his counsel was ineffective for failing to request the appointment of a fingerprint expert. Generally, "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel."[19] The decision to utilize or forgo expert testimony falls within the realm of trial strategy.[20] Counsel may choose not to rely on the testimony of an expert witness because "such an expert might uncover evidence that further inculpates the defendant."[21] In this case, Chambers has not demonstrated that he was prejudiced by the absence of testimony from a fingerprint expert. The testimony that such an expert would have provided is purely speculative. And as we have stated, regardless of whether Chambers' fingerprints were found on the items that he had wanted tested, Officers Gutapfel and Schultz saw Chambers placing the bag containing the drugs underneath his leg. We cannot conclude that counsel was deficient for failing to request the appointment of a fingerprint expert.
 {¶ 29} Chambers next argues that his counsel was ineffective for failing to timely secure the results of the independent testing of the crack cocaine. Counsel *Page 12 
had received permission to obtain independent testing of the crack cocaine. But the results of the testing were not yet available when the trial began. Counsel requested a continuance to obtain these results, but, as we have discussed in detail, the trial court did not grant the continuance because Chambers would not allow it to be at his request. Chambers cannot now attempt to claim that counsel's performance was deficient when Chambers himself contributed to the absence of the test results. Moreover, Chambers was not prejudiced by the failure to secure an independent testing of the crack cocaine because he was able to fully cross-examine the state's witness who had tested the cocaine.
 {¶ 30} Last, Chambers argues that his counsel was ineffective for failing to subpoena witnesses to testify on Chambers' behalf and for failing to fully confer with Chambers prior to trial to adequately prepare a defense. But the record indicates that Chambers had refused to provide counsel with the names of the witnesses whom he had wanted to testify on his behalf. The record further indicates that counsel was otherwise prepared for trial. Counsel vigorously defended Chambers through cross-examination of the state's witnesses. Following our review of the record, we conclude that counsel's performance was not deficient and that Chambers did not receive ineffective assistance.
 {¶ 31} The fifth assignment of error is overruled.
 Sufficiency and Weight of the Evidence {¶ 32} In his sixth assignment of error, Chambers argues that the trial court erred in overruling his motion for a judgment of acquittal under Crim.R. 29. In his seventh assignment of error, he argues that his convictions were not supported by sufficient evidence. And in his eighth assignment of error, he argues that his *Page 13 
convictions were contrary to the manifest weight of the evidence. We address these assignments together.
 {¶ 33} When reviewing the sufficiency of the evidence, we must determine "whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt."[22] We are not permitted to weigh the evidence when reviewing its sufficiency.[23] We apply the same standard of review to determine whether a trial court erred in denying a defendant's Crim.R. 29 motion for an acquittal.[24]
 {¶ 34} But when reviewing the manifest weight of the evidence, we must review the entire record, weigh the evidence, and determine whether the jury lost its way and created a manifest miscarriage of justice.[25]
 {¶ 35} Chambers was convicted of possession of cocaine under R.C.2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Officers Gutapfel and Schultz each saw Chambers attempt to shove the bag containing the cocaine underneath his leg. Testimony concerning Chambers' furtive movements and physical control of the drugs was sufficient to support his conviction for possession.
 {¶ 36} Chambers was further convicted of trafficking in cocaine under R.C. 2925.03(A)(2), which provides that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance." Chambers was found in possession of 13.9 grams of cocaine. Officers *Page 14 
Gutapfel and Schultz testified that this amount of cocaine was greater than that utilized for personal use and was more than an individual person would purchase on the street. A digital scale was found in Chambers' car, and both officers viewed what they believed were flakes of crack cocaine on Chambers' shirt. Further, the passenger in Chambers' car was in possession of an individually packaged, smaller amount of crack cocaine. Officer Gutapfel testified that the amount of cocaine held by the passenger was indicative of an amount that had been sold. Chambers was also found in possession of $1,083 made up of various denominations of bills. We conclude that Chambers' conviction for trafficking in cocaine was supported by sufficient evidence, and the trial court did not err in overruling his motion for an acquittal regarding either offense.
 {¶ 37} We further conclude that Chambers' convictions were not contrary to the manifest weight of the evidence. Chambers had testified that the cocaine and drug paraphernalia belonged to the passenger in his car. But the jury was in the best position to judge the credibility of the witnesses. It was entitled to reject Chambers' testimony and believe that of the testifying officers.
 {¶ 38} The sixth, seventh, and eighth assignments of error are overruled.
 Sentencing {¶ 39} In his fourth assignment of error, Chambers argues that the trial court erred in imposing consecutive sentences for the trafficking and possession offenses. Chambers argues that these two offenses were allied offenses of similar import and that he could not have been sentenced separately for each crime.
 {¶ 40} In State v. Cabrales, this court determined that possession of drugs in violation of R.C. 2925.11(A) and trafficking in the same drugs in violation of R.C. *Page 15 2925.03(A)(2) were allied offenses of similar import.[26] Chambers' convictions stemmed from violations of these exact provisions. Consequently, we sustain Chambers' assignment of error. We must set aside the multiple sentences imposed for the allied offenses and remand this case for the trial court to impose sentence on either the possession offense or the trafficking offense. But our reversal of the sentences is stayed pending the outcome of the Ohio Supreme Court's decision in Cabrales.
 {¶ 41} In all other respects, the judgment of the trial court is affirmed.
Judgment affirmed in part, sentence vacated, and cause remanded; partial stay issued.
HILDEBRANDT, P.J., and PAINTER, J., concur.
[1] R.C. 2925.11(A).
[2] R.C. 2925.03(A)(2).
[3] State v. Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751, 722 N.E.2d 81, ¶ 32; accord Faretta v. California (1975), 422 U.S. 806,95 S.Ct. 2525.
[4] Id. at ¶ 38.
[5] Id. at ¶ 32, quoting State v. Gibson (1976), 45 Ohio St.2d 366,345 N.E.2d 399, paragraph two of the syllabus.
[6] Id. at ¶ 37.
[7] Id., quoting State v. Keenan (1998), 81 Ohio St.3d 133, 138,689 N.E.2d 929.
[8] State v. Steele, 155 Ohio App.3d 659, 2003-Ohio-7103,802 N.E.2d 1127, ¶ 13.
[9] Id. at ¶ 20. See, also, State v. Cassano, supra, 2002-Ohio-3751, at ¶¶ 40-41.
[10] State v. Unger (1981), 67 Ohio St.2d 65, 67,423 N.E.2d 1078.
[11] Id. at 67-68.
[12] See State v. Jenkins (1984), 15 Ohio St.3d 164, 193,473 N.E.2d 264. See, also, State v. Peterson, 7th Dist. No. 06 CO 26, 2007-Ohio-4980, ¶ 63.
[13] State v. Mason, 82 Ohio St.3d 144, 149, 1998-Ohio-370,694 N.E.2d 932.
[14] Id. at 150, quoting Little v. Armontrout (C.A.8, 1997),835 F.2d 1240, 1244.
[15] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052.
[16] Id. at 688.
[17] Id. at 689.
[18] Id. at 694.
[19] State v. Nicholas (1993), 66 Ohio St.3d 431, 436,613 N.E.2d 225.
[20] See State v. Keeling, 1st Dist. No. C-010610, 2002-Ohio-3299, ¶ 8.
[21] State v. Glover, 12th Dist. No. CA2001-12-102, 2002-Ohio-6392, ¶ 25.
[22] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[23] Id.
[24] State v. Jordan, 167 Ohio App.3d 157, 2006-Ohio-2759,854 N.E.2d 520, ¶ 49.
[25] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[26] State v. Cabrales, 1st Dist. No. C-050682,2007-Ohio-857, ¶ 36 *Page 1