[Cite as *State v. Lowry*, 2023-Ohio-4496.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230301 |
| | | TRIAL NO. B-2203968 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| RAVE LOWRY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: December 13, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1} Defendant-appellant Rave Lowry appeals from the trial court's judgment convicting him, following a bench trial, of having weapons under a disability and felonious assault. In four assignments of error, Lowry argues that his convictions were not supported by sufficient evidence and against the manifest weight of the evidence, that he received ineffective assistance of counsel, and that the trial court imposed sentences that were not supported by the record.

{¶2} We hold that because of eyewitness testimony deemed credible by the trial court, Lowry's convictions were supported by sufficient evidence and not against the manifest weight of the evidence. We further hold that Lowry's trial counsel was not ineffective based on the record of proceedings before the trial court. Because we cannot consider evidence outside of the record on direct appeal, we hold that Lowry has not demonstrated that he was prejudiced by his trial counsel's failure to retain an expert witness to recreate the crime scene. Lastly, we lack the authority under R.C. 2953.08(G) to review Lowry's sentences. Accordingly, we overrule each of Lowry's assignments of error and affirm the judgment of the trial court.

### *Factual and Procedural Background*

{¶3} The charges against Lowry relate to the shooting of and resulting injuries to his former romantic partner, Krysta Miles. After they separated, Lowry and Miles were engaged in a public argument that ended with Miles sustaining gunshot wounds in both of her legs. Lowry was subsequently indicted for one count of having a weapon under a disability in violation of R.C. 2923.13(A)(3) and two counts of felonious assault in violation of R.C. 2903.11(A)(1) and (2).

{¶4}   Lowry waived his right to a jury trial and rejected a plea offer from the state, and the case proceeded to a bench trial. At trial, the parties stipulated to Lowry's prior conviction for trafficking in heroin in 2017, and Miles's medical records evidencing her gunshot wounds.

{¶5}   Miles testified that she and Lowry had been in a romantic relationship for approximately 12 consecutive years, but they separated in the weeks leading up to the shooting. She further testified that after she and Lowry separated, they had agreed on a time and place for her to retrieve her speakers from him. She testified that on the late evening of August 15, 2022, she was waiting for Lowry at their planned meeting location, but was instead assaulted by two women she did not recognize.

{¶6}   Miles testified that, as she continued to socialize with her friends in the very early morning of August 16, 2022, one friend informed her that Lowry was also out on the town. Miles wanted to ask Lowry why she was assaulted and to identify the women involved. When Miles and her friends found Lowry, she saw that he was with his mother and the two women that had assaulted her. Miles testified that, as she approached the group, the women that had assaulted her encouraged Lowry to shoot her.

{¶7}   Miles saw one of the women retrieve a gun from Lowry's mother and hand it to Lowry. As Miles began walking away, she heard Lowry threaten to shoot her and her children. Because she was enraged by the mention of her children, she jumped on top of a nearby table and dared Lowry to shoot her. Miles stated that when she jumped down from the table, Lowry looked visibly angry as he began shooting at her. She also testified that she did not have a weapon and did not threaten anyone.

{¶8} As Miles relayed on the witness stand, she fled as Lowry was firing his gun and hid under a van in a nearby parking lot. She further testified that she did not realize she had been shot until the police found her, and she saw blood covering her legs. She testified that there were at least two holes of entry in her lower right leg from the injury and that, at the time of her testimony, she still had bullets and fragments in both of her legs.

{¶9} Officer Kevin Tighe, a patrol officer for the Cincinnati Police Department and first responder on the scene that night, also testified at trial. He recalled finding Miles in a parking lot roughly one block from where the shots were fired. According to Officer Tighe, Miles told him that Lowry had shot her.

{¶10} Officer Elliot Miller, an officer with the investigative unit of the Cincinnati Police Department who was also present on the scene, testified that his role was to canvass the scene and collect evidence. He further testified that he recovered bullet casings from the parking lot on Pleasant Street where Miles ran to take cover. He testified that he later recovered additional casings from Green Street, where the altercation occurred. He testified that although the Green Street bullet casings were test fired, he never received the results. He also testified that he could not confirm who had fired shots at the corner of Green and Race Streets. And he testified that Lowry was not tested for gunshot residue.

{¶11} The state submitted three videos as part of its exhibits, which included footage from a street camera on Green Street, Tighe's body-worn camera footage, and footage from a camera at the Pleasant Street parking lot. The Green Street footage showed Miles arriving on the scene with several other individuals and then hiding behind a blue trash bin. A few minutes later, Miles can be seen walking over to a group

which included Lowry. At this point, the footage showed that Miles jumped on top of a table in front of Lowry, quickly jumped off of the table, and then ran away.

{¶12} In Tighe's body-worn camera footage, Tighe asked Miles who had the gun, and she responded that it was Markeita Mobley, who was romantically involved with Lowry. Tighe's body-worn camera footage further showed that when Tighe asked Miles who shot her, she responded that it was Lowry. Additionally, another woman can be seen in the body-worn camera footage running up to Tighe and screaming, "He did it."

{¶13} The footage from the Pleasant Street parking lot showed Miles running through the parking lot. A few seconds later, another individual is seen running behind Miles. Miles testified that individual was Sharon Watts, who she knew through her cousin. Miles testified that Watts could be seen firing shots in the footage from the Pleasant Street parking lot.

{¶14} At the close of the state's case, Lowry moved for acquittal under Crim.R. 29, which the trial court denied.

{¶15} Mobley testified as a witness for Lowry. She testified that she was in a romantic relationship with Lowry. Mobley was one of the women whom Miles alleged assaulted her before the shooting. But Mobley testified that it was actually Miles who assaulted her and Lowry's cousin by stabbing them. She further testified that Miles sent her a message via Facebook, prior to the Green Street altercation, stating that she was upset and wanted to know where to find Mobley. She testified that she ignored the message, but that in the very early hours of August 16, 2022, Miles and her friends approached Mobley's group as they socialized on the corner of Green and Race Streets.

{¶16} Mobley testified that Miles then stood up on a table in front of them with at least two knives and threatened her and Lowry. She testified that as Miles jumped off of the table, Lowry's cousin referred to Watts and stated, "She has a gun." She further testified that Lowry did not have a gun, but rather another group nearby fired shots in the air to clear the area amidst heightening tensions. She testified that after the shots were fired, the crowd dispersed. She also testified that the police never contacted her about the altercation.

{¶17} On cross-examination, Mobley testified that she did not receive any medical attention for the alleged stabbing by Miles, despite how deep the cut was. She also testified that she filed charges with the police after the shooting incident, but did not file in relation to the stabbing incident. Additionally, she provided testimony which conflicted with the footage from the Green Street camera.

{¶18} Lowry did not testify at trial. He renewed his Crim.R. 29 motion, which the trial court again denied. After reviewing all of the evidence, the trial court found that there was a gun on the scene, that Miles was shot, and that the state had proven beyond a reasonable doubt that Lowry had shot Miles. Accordingly, the trial court found Lowry guilty as charged on all counts.

{¶19} Lowry was sentenced to an aggregate term of five to seven and a half years of incarceration. He now appeals.

### Sufficiency and Weight

{¶20} In challenging the sufficiency and manifest weight of the evidence supporting his convictions, Lowry argues that the state failed to prove beyond a reasonable doubt that Lowry possessed and discharged a gun.

{¶21} To determine whether a conviction is supported by sufficient evidence, we inquire "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *see State v. Curry,* 1st Dist. Hamilton No. C-190107, 2020-Ohio-1230, ¶ 11. When reviewing a challenge to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). Unlike our review of a sufficiency challenge, review of a manifest-weight challenge requires us to independently "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *Thompkins* at 397. However, we will reverse the trial court's decision to convict and grant a new trial only in " 'exceptional cases in which the evidence weighs heavily against the conviction.' " *State v. Sipple*, 1st Dist. Hamilton No. C-190462, 2021-Ohio-1319, ¶ 7, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶22} Beginning with the first count of having weapons under a disability, R.C. 2923.13 provides that, "no person shall knowingly acquire, have, carry, or use a firearm" while under a disability. And regarding counts two and three for felonious assault, R.C. 2903.11(A)(1) provides that, "No person shall knowingly * * * cause serious physical harm to another." The state was required to prove these elements beyond a reasonable doubt. *See State v. Robinson*, 1st Dist. Hamilton No. C-220484, 2023-Ohio-2312, ¶ 21.

{¶23} Because the parties stipulated to Lowry's prior drug trafficking conviction and to Miles's medical records evidencing her gunshot wounds, Lowry's arguments as to the sufficiency and manifest weight of the evidence supporting his convictions rest on the lack of physical evidence that he either possessed or fired a gun. Lowry notes that he was not tested for gunshot residue and that Miller never received any ballistics testing results.

{¶24} But Lowry's arguments ignore the fact that the state presented direct evidence that Lowry possessed and discharged a gun through Miles's eyewitness testimony. *See, e.g., State v. Miller*, 8th Dist. Cuyahoga No. 100461, 2014-Ohio-3907, ¶ 39; *see also City of Cleveland v. Hasan*, 8th Dist. Cuyahoga No. 98490, 2013-Ohio-820, ¶ 8; *State v. Evans*, 4th Dist. Jackson No. 10CA1, 2012-Ohio-1562, ¶ 37. Miles affirmatively testified that she saw Lowry being handed a gun, which he then used to shoot at her. Tighe testified that Miles told him personally that Lowry shot her on the night of the altercation.

{¶25} Though Mobley gave competing testimony that someone other than Lowry fired shots to disperse the crowd, Mobley also undercut her own credibility by providing testimony in which she insisted upon a chain of events conflicting with a reasonable interpretation of the timing of the gunfire in the Greet Street footage. The trial court was also free to give more weight to the testimony of Miles and Tighe over that of Mobley. *See State v. Johnson*, 1st Dist. Hamilton No. C-170354, 2019-Ohio-3877, ¶ 52 ("Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses.").

{¶26} Given Miles's eyewitness testimony, Lowry's convictions are supported by sufficient evidence and not against the manifest weight of the evidence. Accordingly, we overrule Lowry's first and second assignments of error.

### *Ineffective Assistance of Counsel*

{¶27} In his third assignment of error, Lowry argues his trial counsel provided ineffective assistance by failing to engage an expert witness to reconstruct the crime scene.

{¶28} Counsel will not be considered ineffective unless counsel's performance was deficient and caused actual prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). As to deficiency, counsel's performance will be deemed deficient only if it fell below an objective standard of reasonableness. *Strickland* at 688; *Bradley* at 142. Likewise, a defendant is prejudiced by counsel's performance only if there is a reasonable probability that the outcome of the proceedings would have been different but for the deficient performance. *Strickland* at 694; *Bradley* at 142.

{¶29} But we have also held that review outside the record on direct appeal is beyond the scope of our authority. *See State v. Williams*, 1st Dist. Hamilton No. C-190490, 2021 Ohio App. LEXIS 194, 2 (Jan. 27, 2021) ("It is 'a bedrock principle of appellate practice in Ohio' that an appeals court is limited to the record of proceedings before the trial court," quoting *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, ¶ 13). Thus, where a defendant "relies entirely on evidence outside the record," he consequently "cannot demonstrate that counsel's performance was deficient or that, but for counsel's errors, the results of the proceeding would have

9

been different." *Williams* at 3. We are therefore limited solely to the record before the trial court in reviewing Lowry's ineffective assistance of counsel claim.

{¶30} Under this limited review, we hold that Lowry has not demonstrated he was prejudiced by his trial counsel's failure to retain an expert witness to recreate the crime scene because there is no evidence in the record as to what a crime scene expert would have contributed to Lowry's defense.

{¶31} Lowry makes only speculative assertions as to what an expert witness could have proven. Specifically, Lowry argues that a crime scene reconstructionist *may* have been able to construct a more reliable timeline of events after viewing the footage and therefore *may* have identified the shooter with more accuracy. But these arguments require us to look beyond the record before the trial court and make assumptions about what a crime scene reconstructionist could have demonstrated. Further, "the decision to utilize or forgo expert testimony falls within the realm of trial strategy," and Lowry has given us no reason to question his counsel's trial strategy on this limited record and at the direct appeal stage of the case. *See State v. Chambers*, 1st Dist. Hamilton Nos. C-060922 and C-061036, 2008-Ohio-470, ¶ 28.

{¶32} Because we are limited to reviewing the record before the trial court on direct appeal, and the record does not establish Lowry was prejudiced by any deficiencies in his trial counsel's performance, we overrule Lowry's third assignment of error.

### *Improper Sentence*

{¶33} Pursuant to R.C. 2953.08(G)(2), an appellate court may increase, reduce, modify, or vacate and remand a sentence if it clearly and convincingly finds either that the record does not support the sentencing court's findings in a narrow

range of circumstances or that the sentence is otherwise contrary to law. Under R.C. 2953.08(G)(2)(b), appellate review of the record to determine whether the record supports the trial court's sentencing findings is limited to sentences imposed under R.C. 2929.13(B) or (D), R.C. 2929.14(B)(2)(e) or (C)(4), or R.C. 2929.20(I).

{¶34} Lowry argues the record does not support his sentences, because there was disputed evidence regarding Lowry's possession of a weapon. Lowry further contends that even if he fired a gun, the evidence suggested he fired it at the ground, which resulted in Miles only being injured in her legs. Lowry also contends that more weight should be given to the fact that he apologized. However, Lowry fails to tether any of these arguments to one of the statutory provisions enumerated in R.C. 2953.08(G)(2)(b). Therefore, we lack the statutory authority to review the trial court's sentence to determine whether it is supported by the record. *See State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. We therefore overrule Lowry's fourth assignment of error.

### *Conclusion*

{¶35} For the reasons set forth above, we overrule each of Lowry's assignments of error. Accordingly, we affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **BOCK, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.